IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 05-cv-00658-PSF-PAC

MELEA, LIMITED,
THE ADMIRALTY TRUST,
BARNACLE TRUST,
RUM ROW TRUST,
PORT ROYAL TRUST,
PORT ROYAL CHARITABLE TRUST, successor to the Michael Ladney Charitable Trust and the Michael Ladney Charitable Remainder Trust,
RUSSBURY INTERNATIONAL LIMITED,
SEWARD INTERNATIONAL CORPORATION BVI,
BUCCANEER INVESTMENTS LIMITED,

    Plaintiffs,

v.

BARRY S. ENGEL,
ENGEL & REIMAN, P.C., f/k/a ENGEL, REIMAN & LOCKWOOD, P.C.,
JAWER SA,

    Defendants.

## ORDER ON JAWER SA'S MOTION TO DISMISS

This matter is before the Court on Defendant Jawer SA's ("Jawer's") Motion to Dismiss (Dkt. # 78), filed January 20, 2006. After oral argument before the undersigned and consideration of the briefs submitted,[1] the Court now enters the following order.

**I. BACKGROUND**

This suit arises out of the formation of an asset protection plan for Michael Ladney, a nonparty. Jay Herbst, an attorney for Mr. Ladney and also a nonparty,

---

[1] The Court asked parties to submit additional briefing following the hearing on the issue of diversity jurisdiction, which was raised at the hearing.

implemented the asset protection plan.  As part of this plan, Herbst formed various foreign trusts and corporations and transferred assets exceeding $10,000,000 to the various trusts.  Leo Spivack,[2] also an attorney for Ladney, contacted Defendant Jawer, a Swiss company, in 1992 regarding the provision of a shell corporation for some of Ladney's assets, specifically valuable patents.  Jawer formed Melea, Ltd., a plaintiff in this suit, as a result of this request.  Melea, located in Gibraltar, retained Jawer to provide day-to-day administration of its financial affairs.  The two entered into a Fiduciary Mandate, which provided that Jawer would appoint among others Melea's "managing directors . . . and other representatives."  Fiduciary Mandate at 1, attached as Ex. B to Def.'s Mot. Dis.  The General Conditions to the Fiduciary Mandate further provided that Jawer agrees to "exclusively follow[] the instructions which will be transmitted to him by the Principal [Melea] or by any other person authorized by him."  General Conditions at 1, Art. 2, attached as Ex. B to Def.'s Mot. Dis.  Additionally, Melea authorized Jawer "to transfer at all times, the execution in part or total of the Contract of Mandate to a person or a company designated by [Jawer]."  *Id.* at Art. 7.

In 1996, Melea hired Barry Engel, a Colorado attorney and defendant in this action, to represent the entities involved in the asset protection plan.  Jawer claims, and plaintiffs do not dispute, that Melea hired Mr. Engel at the instruction of Mr. Ladney.  *See* Letter from Jawer, attached as Ex. D to Def.'s Mot. Dis.  Melea employed Engel for six years until firing him in 2002.  Plaintiffs allege that during these six years,

---

[2]Mr. Spivack and his law firm, Kleinfeld & Spivack, were originally named as defendants but were dismissed from this action without prejudice upon plaintiffs' motion on August 10, 2005 (Dkt. # 13).

Engel improperly acted as Jawer's agent and the two conspired to misappropriate Melea's assets. Specifically, plaintiffs contend that Engel misappropriated over $4,000,000 in unearned legal fees.

Plaintiffs argue that Jawer delegated to Engel its fiduciary responsibilities with regard to Melea, and knowingly conspired with Engel to misappropriate Melea's assets, breaching its fiduciary duty to protect and preserve the assets of Melea. Plaintiffs also allege that Jawer breached its fiduciary duty by authorizing payment from Melea to attorneys Herbst, Spivack and Engel without proper legal invoices or consideration.

Jawer moves to dismiss the claims against it pursuant to F.R.Civ.P. 12(b)(2), (3) and (6) for, respectively, lack of personal jurisdiction, improper venue and failure to state a claim as well as *forum non conveniens*. Def.'s Mot. at 1. Plaintiffs assert that jurisdiction exists over Jawer because "it transacted business and committed tortious acts within the State of Colorado through its agents, Barry S. Engel and Engel & Reiman, P.C." Am. Compl. at 4 (Dkt. # 68). In post-hearing briefing, Defendants Barry S. Engel and Engel & Reiman, P.C., contend that diversity jurisdiction fails here, where plaintiffs failed to properly allege complete diversity at the time of filing and there is no genuine dispute between United States citizens to support jurisdiction under 28 U.S.C. § 1332(a)(3) (Dkt. # 125).

### III. LACK OF PERSONAL JURISDICTION

Jawer contends that this Court should dismiss Plaintiff's claims against it pursuant to F.R.Civ.P. 12(b)(2) for lack of personal jurisdiction. "The plaintiff bears the burden of establishing personal jurisdiction over the defendant." *Rambo v. Am. S. Ins.*

*Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988).  When a district court considers a 12(b)(2) motion without holding an evidentiary hearing, as in this case, the plaintiff need only make a *prima facie* showing of personal jurisdiction to defeat the motion.  *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998).  Such a *prima facie* case may be made "by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant."  *Id.*  Once a *prima facie* showing of jurisdiction has been made, a court must "determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'"  *Rambo*, 839 F.2d at 1419 n.6 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).

Colorado courts employ a two-pronged analysis in making jurisdictional determinations.  *Wenz v. Memery Crystal*, 55 F.3d 1503, 1506-07 (10th Cir. 1995).  First courts determine whether the exercise of jurisdiction is sanctioned by Colorado's long-arm statute, and second, whether the exercise of jurisdiction comports with federal due process.  While the initial inquiry is a question of state law, the second prong of the analysis is controlled by the United States Constitution.  *Id.* at 1507.

Colorado's long-arm statute, C.R.S. § 13-1-124(1), "extend[s] the personal jurisdiction of Colorado courts to their maximum limits permissible under the United States and Colorado Constitutions."  *Scheuer v. District Court*, 684 P.2d 249, 250 (Colo. 1984).  Therefore, if jurisdiction is consistent with the Fourteenth Amendment's Due Process Clause of the United States Constitution, Colorado's long-arm statute authorizes jurisdiction over a nonresident defendant.  *Benton v. Cameco Corp.*, 375

F.3d 1070, 1075 (10th Cir. 2004), *cert. denied*, 544 U.S. 974 (2005). Thus, the analysis turns to due process.

The Supreme Court in *Asahi Metal Indus. Co., Ltd., v. Superior Court*, 480 U.S. 102 (1987), held that "[t]he constitutional touchstone of the determination whether an exercise of personal jurisdiction comports with due process remains whether the defendant purposefully established minimum contacts in the forum state." *Id.* at 108-09 (quoting *Burger King*, 471 U.S. at 474). In other words, "minimum contacts must be based on an act of the defendant." *Id.* at 109. Such minimum contacts may be shown in two ways–specific or general jurisdiction. *Benton*, 375 F.3d at 1075. Specific jurisdiction is properly asserted where a defendant has purposefully directed its activities at the forum state and such activities give rise to the litigation. *Id.* A court may properly assert general jurisdiction where the defendant has "continuous and systematic activity in the forum state." *Wise v. Lindamood*, 89 F. Supp. 2d 1187, 1189 (D. Colo. 1999); *see also Benton*, 375 F.3d at 1075.

### A. Specific Jurisdiction

A court may assert specific jurisdiction over a nonresident defendant "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *OMI*, 149 F.3d at 1090-91 (quoting *Burger King*, 471 U.S. at 472); *see also Wise*, 89 F. Supp. 2d at 1190. If such purposeful availment in the form of minimum contacts is shown, a court must then consider whether the exercise of personal jurisdiction over

the defendant offends "traditional notions of fair play and substantial justice." *OMI*, 149 F.3d at 1091 (quoting *Asahi*, 480 U.S. at 113).

Here, such purposeful minimum contacts are lacking. Jawer has submitted unrefuted affidavits stating that: Jawer never had an office, affiliate, subsidiary or agent in Colorado; Jawer has never owned property or assets in Colorado; Jawer does not have and has never had a bank account in Colorado; Jawer has entered into no contracts in Colorado nor conducted any business in Colorado; and all employees, officers and directors live and work in Switzerland or France. Further, all contact between Jawer and Colorado was at the direction of Mr. Ladney, who instructed Jawer to cease dealing with Mr. Spivack and instead to hand the responsibility over to Mr. Engel in Colorado. *See* Letter from Jawer, attached as Ex. D to Def.'s Mot. Dis.; *see also Hanson v. Denckla*, 357 U.S. 235, 251-253 (1958) (no minimum contacts where defendant trust company had no office and transacted no business in forum state; "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State").

Plaintiffs contend that Jawer's 1998 billing statement, which reflects that Jawer had contacts with Engel or a member of his firm on 128 days throughout that year, evidences possible contacts with Colorado sufficient for personal jurisdiction. Plaintiffs have not shown, however, that these contacts were initiated by Jawer as opposed to by Mr. Engel or at the direction of Mr. Ladney. Additionally, phone calls and other forms of communication are not necessarily sufficient in themselves to establish minimum contacts. *See Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1076-77 (10th Cir. 1995)

6

(it is well-established that phone calls and letters are not necessarily sufficient by themselves to establish minimum contacts); *Rambo*, 839 F.2d at 1418 (existence of letters or telephone calls to forum state related to the plaintiff's action will not necessarily meet due process standards). Plaintiffs must be able to show that the nature of these contacts are such that they represent an effort by Jawer to "purposefully avail itself of the privilege of conducting activities within the forum state." *Id*. at 1418-19. Here, the evidence shows that any contacts between Jawer and Colorado were based on the unilateral acts of Melea and/or Mr. Ladney in instructing Jawer to deal with Mr. Engel, and not purposeful contacts on the part of Jawer. *Cf. Burger King*, 471 U.S. at 473 ("parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state" are subject to jurisdiction in that other state). There is no evidence in the instant case that Jawer unilaterally reached out to Mr. Engel or to Colorado; rather, such contacts indicate that Jawer followed Melea's specific instructions to deal with Mr. Engel. There is no evidence that Jawer created any continuing obligation to or relationship with Mr. Engel or anyone in Colorado; rather, its only relationship and obligation was to Melea, a Gibraltar corporation.

Plaintiffs also offer evidence that Jawer's vice-president made two visits to Colorado to see Mr. Engel, in 1994 and in 1996. However, they do not present evidence that these visits were related to Melea, or to the events giving rise to litigation. Thus, the two visits cannot form the basis for a finding of specific jurisdiction. Such contacts, even in connection with the correspondence described above, are too

"random, fortuitous, or attenuated" to support jurisdiction. *Burger King*, 471 U.S. at 486 (quotation marks omitted); *cf. Benton*, 375 F.3d at 1076-77 (although it is a "very close case," minimum contacts found where defendant pursued a business relationship with a Colorado resident and sent several employees to plaintiff's office in Colorado in connection with events giving rise to litigation).

The situation here is similar to the circumstances before the Supreme Court in *Hanson*, where the plaintiff's unilateral activity of moving to Florida was insufficient to impose jurisdiction on the defendant trustee, who was obligated to continue doing business with the plaintiff. 357 U.S. at 253. Here, Plaintiff Melea, unilaterally (through Mr. Ladney) decided to change counsel from Mr. Spivack in Florida to Mr. Engel in Colorado. Jawer, under a fiduciary obligation to Melea, had to oblige with Melea's unilateral activity by communicating with Mr. Engel in Colorado. However, such action on the part of Mr. Ladney and Melea is not sufficient to put Jawer on notice, in conducting its activities, that it "should reasonably anticipate being haled into court" in Colorado. *Burger King*, 471 U.S. at 486 (internal citations and quotation marks omitted).

Plaintiffs also argue that Jawer and Mr. Engel engaged in a conspiracy to misappropriate Melea's funds. Pl.'s Resp. at 5. They contend that such a conspiracy subjects Jawer to jursidiction here, as the co-conspirator's contacts–here, Mr. Engel's contacts–with the forum state may be attributed to Jawer. *Id.* (citing *Nat'l Union Ins. Co. v. Kozeny*, 115 F. Supp. 2d 1231, 1237 (D. Colo. 2000)).

A *prima facie* factual showing of a conspiracy is necessary to form the basis of personal jurisdiction of nonresident co-conspirator.  *Am. Land Program, Inc. v. Bonaventure Uitgevers Maatschappij, N.V.*, 710 F.2d 1449, 1454 (10th Cir. 1983) (plaintiff did not meet burden of establishing a *prima facie* case of jurisdiction because the purported basis of its conspiracy theory of jurisdiction was based on mere conclusory allegations); *cf. Kozeny*, 115 F. Supp. 2d at 1237 (attributing alleged co-conspirator's contacts with forum to other nonresident conspirators proper where plaintiff "plead[s] with particularity a conspiracy and overt acts taken in furtherance of the conspiracy").  Here, plaintiffs' generalized conspiracy assertions fail to establish a *prima facie* factual basis for asserting jurisdiction over a nonresident.

However, even assuming minimum contacts have been shown by plaintiffs–either through Jawer's documented contacts with Mr. Engel or through the alleged conspiracy between Jawer and Mr. Engel–the exercise of jurisdiction must still meet traditional notions of fair play and substantial justice.  *Benton*, 375 F.3d at 1078. Factors to be evaluated in making such a determination are the burden on the defendant; the forum state's interest in resolving the dispute; the plaintiff's interest in receiving convenient and effective relief; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several states in furthering fundamental social policies.  *Id.*  Further, there is a relationship between the contacts prong and the fairness prong, such that the weaker a showing of minimum contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction.  *Id.* at 1079.

The first factor, the burden on the defendant, weighs heavily against exercising jurisdiction over Jawer. Under Tenth Circuit law, although this factor is not dispositve, "the burden on the defendant of litigating the case in a foreign forum is of primary concern. . . . When the defendant is from another country, this concern is heightened and 'great care and reserve should be exercised' before personal jurisdiction is exercised over the defendant." *OMI*, 149 F.3d at 1096 (quoting *Asahi*, 480 U.S. at 114). Jawer, a Swiss corporation without an office or property in Colorado, "will not only have to travel outside [its] home country, [it] will be forced to litigate the dispute in a foreign forum unfamiliar with [another country's] law governing the dispute." *Id.*

As for the second factor, "[s]tates have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors." *Id.* Colorado's interest in adjudicating the dispute is limited here, where no plaintiff is from Colorado. Further, a forum state's interest "is also implicated where resolution of the dispute requires a general application of the forum state's laws." *Id.* Here, Jawer asserts, and plaintiffs do not dispute, that Swiss law governs much if not all of this dispute. *See* Fiduciary Mandate, General Conditions at Art. 14, attached as Ex. B to Def.'s Mot. Dis. ("This Contract of Mandate and the general conditions are subject to Swiss law."). Although Colorado also arguably has an interest in preventing its residents, such as Mr. Engel, from doing harm to foreigners, on balance this factor also weighs against jurisdiction over Jawer. Further attenuating Colorado's interest in this dispute is that the relationships at issue, and even the plaintiffs themselves, were essentially created by plaintiffs or those behind them to protect certain assets from

possible access or even jurisdiction by persons or governmental entities within the United States.

Plaintiffs' interest in convenient and effective relief "may weigh heavily in cases where a plaintiff's chances of recovery will be greatly diminished by forcing him to litigate in another forum because of that forum's laws or because the burden may be so overwhelming as to practically foreclose pursuit of the lawsuit." *Benton*, 375 F.3d at 1079.  That, however, is not the situation here.  Plaintiffs–who are all foreign entities with the exception of Port Royal Charitable Trust, which is a citizen of Florida–have made no showing of undue hardship in litigating this matter in either Switzerland, Gibraltar, or some other more appropriate forum.  Therefore, this factor weighs in favor of Jawer and against jurisdiction.  *See id*.

The fourth factor, the interstate judicial system's interest in efficient resolution, asks "whether the forum state is the most efficient place to litigate the dispute."  *Id*. (quoting *OMI*, 149 F.3d at 1097).  A court should look at the location of witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs, and whether jurisdiction is necessary to avoid piecemeal litigation.  *Id*.  Here, it appears some witnesses certainly are located in Colorado, while others may well have to come from abroad.  *See* Pl.'s Reply Br. Supp. Juris. at 4-5 (listing citizenship of parties that includes Gibraltar, Switzerland, Florida, the Cook Islands and the British Virgin Islands) (Dkt. # 123).  The alleged wrongs by Jawer, conspiracy with Mr. Engel and breach of fiduciary duty, arguably occurred in Switzerland, where Jawer is located, and in Colorado, where Mr. Engel is located.  Colorado's substantive law does not

govern this dispute, and Colorado is not a required forum for avoiding piecemeal litigation. For example, Switzerland or Gibraltar arguably could entertain the entire suit. *See e.g.* General Conditions at 2, Art. 14, attached as Ex. B to Def.'s Mot. Dis. (describing competent forum and discussed below). Therefore, litigating the dispute in Colorado would not be more efficient than other possible forums. *See Benton*, 375 F.3d at 1080.

Finally, the fifth factor looks at "whether the exercise of personal jurisdiction by the forum affects the substantive social policy interests of other states or foreign nations." *Id.* (internal citations and brackets omitted). The Supreme Court in *Asahi* cautioned that "great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." 480 U.S. at 115. Here, not only is Jawer a foreign citizen, but a foreign nation's law arguably governs significant aspects if not all of the dispute. Further, Jawer from all appearances did not choose to conduct business with a resident of Colorado, but with a resident of Gibraltar who later chose to procure legal counsel in Colorado. This Court is therefore "required to give deference to the international nature of this case." *Benton*, 375 F.3d at 1080. This factor also weighs against exercising jurisdiction over Jawer.

Jawer, even if it had minimum contacts with Colorado, has made a sufficiently strong showing to defeat jurisdiction here, where all five factors weigh in its favor. Exercising personal jurisdiction over Jawer would offend traditional notions of fair play and substantial justice. *See id.* (defendant "barely satisf[ied] the minimum contacts standard" but the majority of the fairness factors weighed against jurisdiction over a

foreign defendant; thus jurisdiction would offend fair play and substantial justice and could not be exercised). The Court also notes the unresolved issue regarding the forum selection clause, contained in the General Conditions to the Fiduciary Mandate between Jawer and Melea, which states that "[a]ll claims concerning non-execution or misinterpretation will be considered to be under the competence of the Geneva Cantonal Courts of Justice." General Conditions at 2, Art. 14, attached as Ex. B to Def.'s Mot. Dis. Although the Court need not and does not determine whether such a forum selection clause is mandatory in this situation, such a contractual provision does not factor in plaintiff's favor or in support of a strong Colorado interest in this dispute.

### B. General Jurisdiction

General jurisdiction may exist in the absence of specific jurisdiction. "[B]ecause general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's continuous and systematic general business contacts." *OMI*, 149 F.3d at 1091 (internal quotation marks omitted). Here, the contacts are the same as those evaluated for specific jurisdiction–telephone calls and correspondence between Jawer and Mr. Engel and two visits to Colorado. Such contacts, as determined above, are not examples of purposeful availment of the privilege of conducting activities in Colorado. *See Hanson*, 357 U.S. at 253. Jawer cannot be said to have invoked the benefits and protections of Colorado's laws, thereby submitting to the burdens of litigating in Colorado, where the contacts all arose from the unilateral activity of Melea and Mr.

Engel. *See also Burger King*, 471 U.S. at 474-75. Therefore, the Court dismisses all claims against Jawer on the basis of lack of personal jurisdiction.

### III.  VENUE, FORUM NON CONVENIENS, AND FAILURE TO STATE A CLAIM

Because of the Court's determination that personal jurisdiction does not exist over Jawer, the Court need not and does not reach Jawer's other asserted bases for dismissal.

### IV.  OTHER JURISDICTIONAL ISSUES

Defendants Barry S. Engel and Engel & Reiman, P.C. filed post-hearing briefs (Dkts. ## 122 and 125), contending that diversity jurisdiction fails here, where plaintiffs failed to properly allege complete diversity at the time of filing and there is no genuine dispute between United States citizens to support jurisdiction under 28 U.S.C. § 1332(a)(3). However, the case as it stands currently before the Court, after dismissal of Jawer and the earlier dismissal of Defendants Spivack and Kleinfeld & Spivack, involves several foreign plaintiffs as well as a Florida plaintiff suing two Colorado defendants. Such a lineup of parties meets the diversity requirements under 28 U.S.C. § 1332(a)(3). Further, although the Court may decide such jurisdictional issues *sua sponte*, no motion is presently before the Court and jurisdiction appears proper.

### V.  CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant Jawer SA's Motion to Dismiss (Dkt. # 78). All claims against Jawer are dismissed. Remaining are plaintiffs' claims against Defendants Barry S. Engel and Engel & Reiman, P.C.

DATED: September 18, 2006

BY THE COURT:
*s/ Phillip S. Figa*
_____
Phillip S. Figa
United States District Judge